# United States Court of Appeals for the Federal Circuit

05-1493

PARENTAL GUIDE OF TEXAS, INC.,

Plaintiff-Appellant,

v.

THOMSON, INC.,

Defendant-Appellee.

G. Donald Puckett, Monts & Ware LLP, of Dallas, Texas, argued for plaintiff-appellant. With him on the brief was Brent N. Bumgardner. Of counsel was Mark William Born, of Austin, Texas.

Karl L. Mulvaney, Bingham McHale LLP, of Indianapolis, Indiana, argued for defendant-appellee. With him on the brief was David O. Tittle. Of counsel on the brief were Joy M. Soloway, E. Lee Haag, and Andrew P. Price, Fulbright & Jaworski L.L.P., of Houston, Texas; and Richard A. Huser and Meggan L. Ehret, Thomson Inc., of Indianapolis, Indiana.

Appealed from: United States District Court for the Eastern District of Texas

Judge T. John Ward

# United States Court of Appeals for the Federal Circuit

05-1493

PARENTAL GUIDE OF TEXAS, INC.,

Plaintiff-Appellant,

v.

THOMSON, INC.,

Defendant-Appellee.

_____

DECIDED:  April 21, 2006

_____

Before RADER, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

CLEVENGER, <u>Senior Circuit Judge</u>.

Plaintiff-appellant Parental Guide of Texas, Inc. (Parental Guide) appeals the decision of the United States District Court for the Eastern District of Texas granting summary judgment to Defendant-appellee Thomson, Inc. (Thomson).  <u>Parental Guide of Texas, Inc. v. Thomson, Inc.</u>, No. 2:03-CV-22 (E.D. Tex. Jan. 20, 2005) (<u>Summary Judgment</u>).  The court held that Thomson did not owe Parental Guide a contingent payment under the Release and License Agreement (the Agreement) that had settled a previous patent infringement suit between the parties.  Because we agree with the district court that there was no "Litigation Royalty" "expressly determined in the Lawsuit in accordance with the law applicable to 35 U.S.C. § 284," such that Thomson is not obligated to pay a contingent payment under the Agreement, we affirm.

# I

In a previous lawsuit, Parental Guide sued Thomson and several other parties, including Mitsubishi Digital Electronics America, Inc., and Mitsubishi Electric and Electronics USA, Inc. (collectively, Mitsubishi), for patent infringement. Parental Guide and Thomson reached a settlement and entered into the Agreement, under which Thomson made a damages payment of $4 million. In addition, the Agreement provided that if Parental Guide obtained a "Favorable Termination" of the lawsuit, Thomson would pay a contingent payment based upon a "Litigation Royalty." Specifically, the Agreement obligated Thomson to pay:

> (a) a nonrefundable damages payment of Four Million dollars ($4,000,000) within seven (7) business days after the Effective date; and
> (b) a contingent payment in accordance with the following:
> > (i) if and only if there is a Favorable Termination of the Lawsuit, an amount equal to
> > > (i) 60% of the Litigation Royalty multiplied by 16,000,000 units, less
> > > (ii) the payment made pursuant to paragraph 3(a); or
> > (ii) if and only if all defendants in the Lawsuit settle with Parental Guide before any Favorable Termination of the Lawsuit, Thomson will pay no further royalty.

A "Favorable Termination" was defined as:

> either (a) a final, irrevocable and nonappealable judgment and/or order in the Lawsuit, which holds (specifically or to the effect) that claims of the '964 Patent are valid, enforceable and infringed by accused television sets that were manufactured and sold by an active defendant in the Lawsuit, or (b) settlement agreements are reached with all remaining defendants in the case before the expiration of thirty (30) days after the United States District Court for the Eastern District of Texas renders its final judgement, provided however that at least one defendant must have remained in the lawsuit as of the date of such judgment.

In addition, the "Litigation Royalty" was defined as:

the lowest per unit reasonable royalty, if any, as expressly determined in the Lawsuit in accordance with the law applicable to 35 U.S.C. § 284, by the final, irrevocable, and nonappealable order in the Lawsuit.

Finally, the contingent payment was capped at $6,500,000.

By October 31, 2002, Mitsubishi was the only remaining defendant in the lawsuit; all the other defendants had settled. Mitsubishi filed an offer of judgment pursuant to Fed. R. Civ. P. 68 (the Rule 68 offer), which Parental Guide accepted. Rule 68 provides that, up to 10 days before trial begins, a defendant may offer to allow judgment to be taken against him for a specified sum. If that offer is accepted within 10 days, and the offer and acceptance are filed with the court, "the clerk shall enter judgment." Fed. R. Civ. P. 68. However, if the offer is not accepted, and the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Pursuant to the Rule 68 offer, and Parental Guide's acceptance of that offer, the Court entered Final Judgment. The Final Judgment stated:

> U.S. Patent No. 4,605,964 is valid and enforceable. Mitsubishi accused televisions, as identified by Plaintiff Parental Guide, infringe U.S. Patent No. 4,605,964. A royalty rate under 35 U.S.C. 284 of $1.15 per television shall apply to all accused televisions sold after the filing of this lawsuit and projected to be sold through the expiration of U.S. Patent No. 4,605,964 on August 12, 2003 and that units sold and projected to be sold during this period will total approximately 955,000 televisions. The total Judgment award shall be in the amount of $1,098,250.

On November 15, 2002, Mitsubishi filed a notice of appeal with this court. However, that same day, Mitsubishi and Parental Guide reached an agreement whereby the parties entered into a "Covenant not to Sue," Parental Guide released Mitsubishi from the claims that had been brought in the lawsuit, and Mitsubishi agreed to satisfy the judgment by providing Mitsubishi product, valued at retail price, in lieu of cash.

Mitsubishi abandoned its appeal and Parental Guide filed a "Satisfaction of Judgment" with the Court. The Final Judgment thus became irrevocable and nonappealable.

Two months later, in January 2003, Parental Guide made a demand on Thomson for a contingent payment. Parental Guide argued that it had obtained a "Favorable Termination" of the lawsuit via the Final Judgment with Mitsubishi and that as a result, under the Agreement, Thomson was required to pay royalties to Parental Guide. Thomson refused to make a contingent payment and filed an action for declaratory judgment against Parental Guide in the District Court for the Southern District of Indiana. Thomson argued that the Rule 68 offer and acceptance constituted a settlement, such that Parental Guide had settled the patent case with all defendants before a "Favorable Termination" occurred under the Agreement. Further, Thomson argued that that royalty rate contained in the Rule 68 offer, and incorporated into the Final Judgment, was not a "Litigation Royalty" under the terms of the Agreement, such that no contingent payment was owed. In response, Parental Guide filed an action for breach of contract in the District Court for the Eastern District of Texas. Thomson asserted a counterclaim for declaratory relief. The Indiana action was stayed to allow the case to proceed in the Eastern District of Texas.

The parties filed cross-motions for summary judgment in the district court for the Eastern District of Texas. The district court denied Parental Guide's motion and granted Thomson's motion, holding that Thomson did not owe any contingent payment because no "Litigation Royalty" had been "expressly determined . . . in accordance with the law applicable to 35 U.S.C. § 284" in the preceding lawsuit. Summary Judgment at 6-12.

05-1493                                        4

Parental Guide initially appealed to the United States Court of Appeals for the Fifth Circuit. However, Thomson moved to transfer the case to this court, arguing that because the Agreement expressly refers to the patent statute, 35 U.S.C. § 284, the court must determine what the parties meant by reference to that statute, and that the case thus falls within this court's appellate jurisdiction. The Fifth Circuit granted Thomson's motion to transfer to this court.

Under law of the case principles, if we, "the transferee court[,] can find the transfer decision plausible, [our] jurisdictional inquiry is at an end." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988). We have jurisdiction over cases where patent law is a necessary element of one of the well-pleaded claims. Id. at 809. Because Parental Guide's claim for breach of the Agreement requires determining what the parties meant by reference to section 284 of the patent statute, we find that the Fifth Circuit's decision to transfer the case to this court is at least plausible, and our jurisdictional inquiry is at an end. Thus, we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II

This court reviews the district court's grant of summary judgment under the law of the regional circuit. Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1191 (Fed. Cir. 2004). Thus, we review the district court's decision to grant summary judgment de novo, using the same standard applied by the district court. Hall v. Gillman, Inc., 81 F.3d 35, 36 (5th Cir. 1996). Summary judgment is properly granted when, viewing the evidence in the light most favorable to the non-movant, the record indicates that there is "no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

III

This case turns upon interpreting the Agreement between Parental Guide and Thomson. Contract interpretation is a matter of state law. <u>Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.</u>, 871 F.2d 1082, 1085 (Fed. Cir. 1989). The district court applied Texas law in interpreting the Agreement, and the parties agree that Texas law governs the contract. Thus, we will also apply Texas law in interpreting the Agreement.

Under Texas law, the primary concern in construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. <u>R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.</u>, 596 S.W.2d 517, 518-19 (Tex. 1980) (citing <u>Citizens Nat'l Bank in Abilene v. Tex. & Pac. Ry. Co.</u>, 150 S.W.2d 1003 (Tex. 1941)). Thus, the court is concerned with the objective intent evidenced by the language, as opposed to the subjective intent of the parties. <u>Sun Oil Co. (Del.) v. Madeley</u>, 626 S.W.2d 726, 731 (Tex. 1981). The court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract, <u>Univ. C.I.T. Credit Corp. v. Daniel</u>, 243 S.W.2d 154, 158 (Tex. 1951), and no single provision taken alone will be given controlling effect, <u>Myers v. Gulf Coast Minerals Mgmt. Corp.</u>, 361 S.W.2d 193, 196 (Tex. 1962).

Whether a contract is ambiguous is a question of law. <u>Friendswood Dev. Co. v. McDade & Co.</u>, 926 S.W.2d 280, 282 (Tex. 1996). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one

05-1493                                    6

interpretation. Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121 (Tex. 1996). However, if a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous. Friendswood Dev. Co., 926 S.W.2d at 282 (citing Nat'l Union Fire Ins. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995)). An unambiguous contract will be enforced as written. Sun Oil Co., 626 S.W.2d at 728.

IV

In granting Thomson's motion for summary judgment, the district court held that Thomson did not owe any contingent payment to Parental Guide because no "Litigation Royalty" had been "expressly determined . . . in accordance with the law applicable to 35 U.S.C. § 284" in the preceding patent infringement lawsuit. Summary Judgment at 6-12. In their briefs to this court, the parties spent much time arguing other grounds upon which this court could rule; the parties analyze, for example, whether a Rule 68 judgment constitutes a settlement of a case and whether Parental Guide achieved a "Favorable Termination" of the lawsuit. However, we need not reach these arguments, as we agree with the district court that there is no "Litigation Royalty" as it is defined in the Agreement.

As Parental Guide concedes in its briefs to this court, the parties, in drafting the Agreement, utilized terms of art of patent law. In particular, the parties defined "Litigation Royalty" as "the lowest per unit reasonable royalty, if any, as expressly determined in the Lawsuit in accordance with the law applicable to 35 U.S.C. § 284." Section 284 of the patent statute provides that "[u]pon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the

infringer." 35 U.S.C. § 284 (2000) (emphasis added). Section 284 contemplates that the amount of damages will be determined in one of two ways. Either damages are found by a jury, or "[w]hen the damages are not found by a jury, the court shall assess them." Id. (emphasis added). Thus, section 284 provides that "[t]he court may receive expert testimony as an aid to the determination of damages or what royalty would be reasonable under the circumstances." Id. (emphasis added). Accordingly, the district court found that "[b]y its express reference to the statute, the agreement . . . contemplates that the court shall 'assess' or determine those damages in the absence of a jury finding." Summary Judgment at 8 (emphasis added).

In addition, as both parties recognize, a "reasonable royalty" rate under section 284 is calculated with reference to the long list of factors outlined in Georgia-Pacific Corp. v. U.S. Plywood Co., 318 F. Supp. 1116, 1120 (S.D.N.Y.1970), modified and aff'd, 446 F.2d 295 (2d Cir.), cert. denied, 404 U.S. 870 (1971). Dow Chem. Co. v. MEE Indus., Inc., 341 F.3d 1370, 1382 (Fed. Cir. 2003) ("[T]he district court should consider the so-called Georgia-Pacific factors in detail, and award such reasonable royalties as the record evidence will support.") (citation omitted). Accordingly, the district court found that the reference to section 284 in the definition of "Litigation Royalty" was "a specific and unambiguous reference to . . . the Georgia Pacific factors." Summary Judgment at 7. Thus, by referencing section 284, the Agreement unambiguously contemplated that a "Litigation Royalty" would be a reasonable royalty that was determined by a judge or a jury through the express application, by the judge or jury, of the Georgia Pacific factors.

However, under Rule 68, the terms of a judgment are agreed upon by the parties; the court has no input or discretion to alter or modify any of the terms. Ramming v. Natural Gas Pipeline Co. of Am., 390 F.3d 366, 370-71 (5th Cir. 2004); see also Fed. R. Civ. P. 68 ("If . . . the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.") (emphasis added). Indeed, the court has no role in the entry of judgment on a Rule 68 offer. Rather, as the district court noted, the entry of judgment "is generally a ministerial act and can be performed by the clerk without any input from the court or a jury." Summary Judgment at 9; see Ramming, 390 F.3d at 370-71 (quoting Webb v. James, 147 F.3d 617, 621 (7th Cir. 1998) ("Rule 68 operates automatically, requiring that the clerk 'shall enter judgment' upon the filing of an offer, notice of acceptance and proof of service. This language removes discretion from the clerk or the trial court as to whether to enter judgment upon the filing of the accepted offer."); Perkins v. U.S. West Commc'ns., 138 F.3d 336, 338 (8th Cir. 1998) ("Rule 68 leaves no discretion in the district court to do anything other than enter judgment once an offer of judgment has been accepted.")).

In this case, the parties agreed to a royalty rate in the Rule 68 offer and acceptance. That agreed-upon royalty rate was entered into a Rule 68 judgment by the clerk of the court. Neither a jury nor the court made an express determination of a reasonable royalty, nor did a jury or the court undertake an evaluation of the Georgia Pacific factors. Indeed, the court did not "award" damages under section 284, but rather entered a judgment in which the parties agreed to certain damages. As such, the district court correctly interpreted the Agreement and held that there was no "Litigation

Royalty" "expressly determined . . . in accordance with the law applicable to 35 U.S.C. § 284."

On appeal, Parental Guide argues that the existence of a "Litigation Royalty" is not a condition precedent to the obligation to pay a contingent payment and that Thomson thus owes a contingent payment even if there was no "Litigation Royalty" determined in the lawsuit. However, the Agreement only requires Thomson to pay a sum based upon a "Litigation Royalty;" the Agreement does not provide for any other form of payment or any other method of computing a payment. Further, under Texas law, "[i]n order to make performance specifically conditional, a term such as 'if,' 'provided that,' 'on condition that,' or similar phrase of conditional language must normally be included." Criswell v. European Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990). Indeed, the Agreement defined a "Litigation Royalty" as a "reasonable royalty, if any, expressly determined . . . in accordance with the law applicable to 35 U.S.C. § 284." J.A. 46 (emphasis added). Thus, if there is no reasonable royalty expressly determined in accordance with the law applicable to 35 U.S.C. § 284, there is no "Litigation Royalty," and if there is no "Litigation Royalty," there can be no contingent payment.

If the parties had wished that any royalty rate determined in the lawsuit, such as the agreed-upon royalty rate of the Rule 68 judgment, could be used to compute a contingent payment, it would have been a matter of the utmost simplicity to write language in the Agreement that provided for a royalty rate not burdened by the requirements of section 284. However, the parties chose to refer to section 284 in defining the royalty upon which a contingent payment would be based. As no royalty

was expressly determined by either a judge or a jury through the application of the Georgia Pacific factors, there is no "Litigation Royalty" on which to base a contingent payment. Thus, Thomson does not owe Parental Guide any contingent payment under the Agreement. We agree with the district court and thus affirm the grant of summary judgment for Thomson.

AFFIRM
