NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**INDUSTRIAL MODELS, INC.,**
*Plaintiff-Appellant*

v.

**SNF, INC., BRANDFX HOLDINGS, LLC, BRANDFX, LLC, DBA BRANDFX,**
*Defendants-Cross-Appellants*

---

2017-1172, 2017-1173

---

Appeals from the United States District Court for the Northern District of Texas in No. 4:15-cv-00689-A, Judge John H. McBryde.

---

Decided: November 7, 2017

---

ERIC VAN CAMPEN JANSSON, Jansson Munger McKinley & Kirby Ltd., Racine, WI, argued for plaintiff-appellant. Also represented by PETER N. JANSSON, MOLLY H. MCKINLEY; DAVID CURTIS SCHULTE, Thompson & Knight LLP, Dallas, TX.

MICHAEL D. ANDERSON, Kelly Hart & Hallman LLP, Fort Worth, TX, argued for defendants-cross-appellants.

Also represented by HUGH GALEN CONNOR, II, BRIAN
GARRETT.

───────────────

Before DYK, O'MALLEY, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Industrial Models, Inc. ("Industrial Models") appeals decisions of the U.S. District Court for the Northern District of Texas ("District Court") that: dismissed Counts I–III and VII of Industrial Models' Complaint—which assert antitrust and tortious interference claims—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), *Indus. Models, Inc. v. SNF, Inc.* (*Indus. Models I*), No. 4:15-CV-689-A, 2015 WL 5606384, at *4 (N.D. Tex. Sept. 23, 2015); and denied Industrial Models' motions for leave to amend the Complaint as to those counts, *Indus. Models, Inc. v. SNF, Inc.*, No. 4:15-CV-689-A (N.D. Tex. Aug. 3, 2016) (J.A. 13−14); *Indus. Models, Inc. v. SNF, Inc.*, No. 4:15-CV-689-A (N.D. Tex. Nov. 23, 2015) (J.A. 11−12). On appeal, Industrial Models also seeks sanctions. *See* Appellant's Mot. for Sanctions, ECF No. 52.

Cross-Appellants SNF, Inc., BrandFX Holdings, LLC, ("BFX Holdings") and BrandFX, LLC, doing business as BrandFX ("BFX") (collectively, "the SNF entities")[1] appeal

───────────────

[1]    On August 30, 2013, SNF, Inc. sold its relevant assets to BFX "at the direction of [BFX Holdings]." J.A. 747; *see* J.A. 461, 518−19. Consequently, any reference to SNF, Inc.'s actions, as distinct from those of the SNF entities, refer to "SNF" as an individual party. BFX is the wholly owned subsidiary of BFX Holdings. *See* J.A. 51; Oral Arg. at 42:29−56, http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2017-1172.mp3 (Q: "What is

the District Court's decisions that: denied the SNF entities' motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), *Indus. Models, Inc. v. SNF, Inc.* (*Indus. Models II*), No. 4:15-CV-689-A, 2016 WL 7680857, at *1 (N.D. Tex. Aug. 18, 2016); granted summary judgment in favor of Industrial Models on Counts IV–VI of its Complaint for a declaratory judgment of noninfringement of trade dress, patent, and copyright, *Indus. Models, Inc. v. SNF, Inc.* (*Indus. Models III*), No. 4:15-CV-689-A, 2016 WL 4533321, at *1, *4 (N.D. Tex. Aug. 29, 2016); and awarded attorney fees to Industrial Models, *Indus. Models, Inc. v. SNF, Inc.*, No. 4:15-CV-689-A (N.D. Tex. Oct. 18, 2016) (J.A. 30−33). For the reasons stated below, we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012), and we affirm-in-part, vacate-in-part, and remand.

BACKGROUND

This suit relates to Industrial Models' decision to enter the market for fiberglass utility bodies for use in trucks. *See* J.A. 880–81. In early 2013, SNF was in the business of manufacturing fiberglass utility bodies sold under the name "Brand FX Body Company." J.A. 460; *see* J.A. 1867−83 (images of these utility bodies). SNF allegedly learned that Badger Truck Center, LLC ("Badger") "was offering for sale fiberglass utility bodies with the same look and appearance as SNF's." J.A. 2135. SNF alleged that Badger admitted that it had manufactured the bodies using a set of molds created by a separate

the relationship among the three companies?" A: "I believe the relationship is, as represented there, is that SNF has an ownership part of [BFX] Holdings, [BFX] Holdings is the holding company for [BFX] LLC." Q: "What percentage ownership does SNF have in [BFX] Holdings?" A: "I do not know the answer to that.").

company at Badger's request, J.A. 2135−36, and further admitted that the other company used SNF's utility body, provided to it by Badger, as a template to create the molds, *see* J.A. 2136 (describing the process of making an unauthorized copy of a design based on an existing mold as "splashing"); *see also* J.A. 2137, 2337. Badger further informed SNF that it had no desire to continue manufacturing utility bodies and, in fact, had sold the molds to Industrial Models. J.A. 2136. SNF allegedly learned that Industrial Models was attempting to re-sell the molds, J.A. 1728; *see* J.A. 2137, and, in February 2013, SNF sent Industrial Models a cease-and-desist letter indicating that the "molds were splashed and built from BrandFX products and designs and infringe on our trade dress, our copyrights and our patents," J.A. 466; *see* J.A. 468.

In March 2013, SNF sued Industrial Models in Texas state court, alleging trade dress infringement and common law unfair competition. *See* J.A. 2339, 2341−42. Following Industrial Models' failure to timely answer, the Texas state court awarded SNF a default judgment and injunction, J.A. 2345−46, both of which were later reversed and remanded for improper service of process, *see Indus. Models, Inc. v. SNF, Inc.*, No. 02-13-00281-CV, 2014 WL 3696104, at *1 (Tex. App. July 24, 2014). While the Texas appeal was pending, SNF sold the assets relating to its utility body product line to BFX Holdings. As part of the transfer, SNF assigned all of its intellectual property associated with the utility body product line to BFX. SNF eventually voluntarily dismissed the claims on remand. J.A. 2348. A year later, Industrial Models sued SNF in the District Court, J.A. 51, 71−79, and these appeals followed.

## DISCUSSION

### I. Jurisdiction

Before reaching the merits of this case, we must first address whether we have jurisdiction to consider the

merits of this appeal and whether the District Court had jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . . (internal quotation marks and citation omitted)). Therefore, we assess each below.

## A. Our Jurisdiction Under
## 28 U.S.C. § 1295(a)(1)

This case comes before the Federal Circuit via transfer from the Fifth Circuit. *See* Order Granting Mot. to Transfer, *Indus. Models, Inc. v. SNF, Inc.*, No. 16-11439 (5th Cir. Nov. 4, 2016). The Supreme Court has instructed circuit courts to uphold determinations of subject matter jurisdiction by sister circuits "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (internal quotation marks and citation omitted). In other words, "[u]nder law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Id.* at 819; *see Parental Guide of Tex., Inc. v. Thomson, Inc.*, 446 F.3d 1265, 1268 (Fed. Cir. 2006) (applying this test).

To determine plausibility, we follow the Supreme Court's directive that "arising under" jurisdiction pursuant to 28 U.S.C. § 1338(a), which provides that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents," "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." *Christianson*, 486 U.S. at 808−09. Industrial Models' Complaint alleged declaratory

judgment of noninfringement of the SNF entities' patent rights. *See* J.A. 76−77. For declaratory judgment actions, we look "to the action that the declaratory defendant would have brought" to determine whether jurisdiction arises under any Act of Congress relating to patents. *Speedco, Inc. v. Estes*, 853 F.2d 909, 912 (Fed. Cir. 1988). In this case, SNF expressly threatened to bring an action for patent infringement under 35 U.S.C. § 271 (2012). Though SNF later assigned its patent rights to BFX, as discussed below, neither SNF nor BFX ever withdrew the threat to assert claims for infringement of patents relating to the utility bodies. Because the underlying claim falls under the patent statute and is not wholly frivolous, we find that the Fifth Circuit's decision to transfer the case to our court is at least plausible, and our "arising under" jurisdictional inquiry ends there.

## B. The District Court's Jurisdiction Pursuant to 28 U.S.C. § 2201(a)

The District Court denied the SNF entities' Rule 12(b)(1) Motion to Dismiss the declaratory judgment claims for patent, copyright, and trade dress. *See Indus. Models II*, 2016 WL 7680857, at *1. We review de novo a district court's decision to dismiss for lack of subject matter jurisdiction. *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011).

A court has subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks, footnote, and citation omitted). The requirement of a substantial controversy "is the same as an Article III case or controversy." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d

1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937)).

To determine whether a case or controversy existed, we consider, inter alia:  whether a party has "prov[ed] a reasonable apprehension of suit,"[2] *Prasco*, 537 F.3d at 1336 (citation and footnote omitted); whether there has been "meaningful preparation to conduct potentially infringing activity," *id.* at 1336 n.4 (internal quotation marks and citation omitted); whether a party demonstrates "refusal to grant . . . a covenant not to sue," *Arris Grp.*, 639 F.3d at 1381; and "the nature and extent of any communications between the declaratory plaintiff and the patentee" related to infringement, *id.* at 1378 (explaining that parties involved in discussions, even where those parties are not involved in a suit, may be included in a declaratory judgment claim).

Sufficient evidence exists here to suggest an actual case or controversy between the parties.  Industrial Models has devoted substantial resources to its new model utility mold business.  *See* J.A. 880.  SNF sent cease-and-desist letters threatening imminent suit for

---

[2]    While we determined that *MedImmune* overruled the use of the "reasonable apprehension of suit" inquiry as the sole factor in determining jurisdiction, *see Teva Pharm.*, 482 F.3d at 1339 ("[B]ecause the Supreme Court in *MedImmune* cautioned that our declaratory judgment reasonable-apprehension-of-suit test contradicts and conflicts with its precedent, these Federal Circuit tests have been overruled by an intervening Supreme Court decision." (internal quotation marks, alterations, and citation omitted)), our case law makes clear that we may continue to look to this fact as a helpful tool, *see Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).

alleged infringement of patent, copyright, and trade dress protections, *see* J.A. 466, 468, and filed a suit alleging trade dress infringement, *see* J.A. 2341. Each SNF entity has refused to sign covenants not to sue, *see* J.A. 32, 2761, and all maintained litigation positions in this suit for nearly a year before filing their Rule 12(b)(1) Motion to Dismiss, *see* J.A. 430. This is enough, if minimally, to satisfy the case or controversy requirements of Article III.

Although SNF assigned its intellectual property ("IP") rights before the declaratory judgment suit was filed, *compare* J.A. 747, *with* J.A. 51, we find sufficient evidence demonstrating a case or controversy still exists between Industrial Models and SNF. Although the SNF entities counter that our decision in *King Pharmaceuticals, Inc. v. Eon Labs, Inc.* demonstrates that a court does not retain subject matter jurisdiction over a prior owner of IP who sold all of its interests, Cross-Appellants' Br. 52−53; *see King Pharm.*, 616 F.3d 1267 (Fed. Cir. 2010), that case is easily distinguished. In *King Pharmaceuticals*, the prior patent owner made stipulations to waive its rights to sue and did not participate in the relevant litigation. *See* 616 F.3d at 1281–82. In contrast, SNF refused to sign any covenant not to sue and participated in the proceedings below represented by the same counsel as BFX and BFX Holdings, *see* J.A. 32, 146, and all three parties retain common ownership interests, *see* J.A. 1728. The District Court made a factual finding, moreover, that all of the SNF entities acted collectively in connection with the threatened enforcement of the IP rights at issue—a finding we do not disturb. We find that SNF's sale of its IP does not deprive the court of subject matter jurisdiction under these circumstances.

## II. Antitrust Claims

The District Court dismissed Counts I–III and VII of Industrial Models' Complaint, *Indus. Models I*, 2015 WL 5606384, at *1, *4, which alleged that the SNF entities

violated Sherman Act §§ 1–2, 15 U.S.C. §§ 1–2 (2006), *see* J.A. 71–75, and that the SNF entities collectively committed tortious interference with prospective economic advantage, *see* J.A. 79. We review a district court's dismissal under Rule 12(b)(6) according to the law of the regional circuit, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014), here, the Fifth Circuit. The Fifth Circuit reviews dismissals for failure to state a claim "*de novo*, taking the allegations of the complaint to be true." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss for failure to state a claim, the facts as pleaded must allow the court to infer that the plaintiff's right to relief is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In relevant part, the District Court found that the SNF entities were immunized from the claims under the *Noerr-Pennington* doctrine,[3] which allows parties to petition the Government for certain action without facing antitrust scrutiny. *Indus. Models I*, 2015 WL 5606384, at *2–3.[4]

---

[3] The *Noerr-Pennington* doctrine takes its name from two Supreme Court cases, *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[4] The District Court also dismissed other alternative theories of antitrust liability. *See Indus. Models I*, 2015 WL 5606384, at *3 & n.1. Because we affirm the District Court's holding on the grounds of *Noerr-Pennington* immunity, we decline to consider the alternate holdings of dismissal.

## A. The *Noerr-Pennington* Doctrine

"The essence of the [*Noerr-Pennington*] doctrine is that parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). Governmental action includes "'petitions' made to the . . . judicial branch[] . . . in the form of administrative or legal proceedings." *Id.* *Noerr-Pennington* immunity "protect[s] those acts reasonably and normally attendant upon effective litigation," including "threats of litigation." *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983); *accord McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992) (similar).

There is a recognized exception to *Noerr-Pennington* immunity for "sham litigation." *Coastal States*, 694 F.2d at 1368. Under this exception, activities and litigation "not genuinely aimed at procuring favorable government action" will not be immunized from antitrust allegations. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988) (citation omitted). The Supreme Court has stated that "sham litigation" is that which is both "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and subjectively "an attempt to interfere *directly* with the business relationships of a competitor," through "use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60−61 (1993) (internal quotation marks, brackets, and citations omitted). "[A]n objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* at 57 (footnote omitted).

B. *Noerr-Pennington* Immunity Bars Industrial Models'
Antitrust Claims

Industrial Models argues that "[t]he facts set forth in the Complaint clearly and robustly allege that [the SNF entities] engaged in objectively baseless litigation threats and actual litigation," such that the sham litigation exception should apply.  Appellant's Br. 48.  We disagree.

In Counts I–III and VII of the Complaint,[5] Industrial Models alleges the following:  (1)  SNF "made a specific offer . . . to enter an agreement restraining interstate trade" before the Texas lawsuit, J.A. 71, referring to SNF's February 2013 cease-and-desist letter, *see* J.A. 56; (2) SNF filed and continued to prosecute a "bad-faith Texas lawsuit," J.A. 71, *see* J.A. 72; (3) SNF made further offers to collude during the Texas lawsuit, J.A. 71, referring to a July 2013 teleconference between parties' counsel during the Texas litigation, *see* J.A. 59, 62; (4) SNF pressured Badger to enter an agreement restraining trade, J.A. 72, and interfered with Badger's potential relationship with Industrial Models, J.A. 79, referring to communications asking Badger to cease-and-desist sale of allegedly infringing products, *see* J.A. 65–66; (5) the SNF entities did not retract certain infringement allegations, J.A. 72; and (6) the SNF entities restrained competition by "causing stoppage and reduction in output by" Indus-

---

[5]    Industrial Models does not make separate arguments with respect to the dismissal of Count VII (tortious interference).  *See generally* Appellant's Br.  Although *Noerr-Pennington* arose in the antitrust context, courts have extended it to protect other claims, including common law tortious interference claims.  *Video Int'l Prod.,* 858 F.2d at 1084.  Our reasoning for affirming the District Court's dismissal with respect to Counts I−III therefore applies with equal force to Count VII.

trial Models, J.A. 73, referring to Industrial Models' decision not to produce the subject molds based on the SNF entities' refusal to withdraw infringement allegations and efforts to obtain an injunction, *see* J.A. 64. On the face of the Complaint, all acts alleged are either litigation or attendant acts related to the litigation, such that *Noerr-Pennington* immunity applies.

The sham litigation exception does not save Industrial Models' antitrust claims. Industrial Models has not demonstrated that any of the alleged acts related to the Texas litigation were objectively baseless. Moreover, unlike in other cases finding the sham litigation exception applicable, the SNF entities did not engage in "a pattern of baseless, repetitive claims." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972); *see id.* at 515 (describing sham litigation as "massive, concerted, and purposeful activities of the group" to "harass and deter their competitors" from access to the courts); *see also Otter Tail Power Co. v. United States*, 410 U.S. 366, 380 (1973) (describing sham litigation as "evidenced by repetitive lawsuits carrying the hallmark of insubstantial claims").

With respect to patent and copyright, the Complaint simply alleged that before the filing of the Texas lawsuit, SNF made two statements to Industrial Models and made similar statements to Badger. In a first letter to Industrial Models, SNF stated that the molds "infringe on our trade dress, our copyrights and our patents." The second cease-and-desist letter stated that "BrandFX owns valuable patent and trade dress rights in the molds." J.A. 466, 468. None of these allegations included a clear threat of litigation with respect to patent or copyright infringement, and the Texas lawsuit did not include any claims of patent or copyright infringement. Such isolated statements, even if objectively unreasonable, without specific threats of litigation are in the circumstances of this case insufficient to support an antitrust claim.

C. Industrial Models' Remaining Arguments Fail

Industrial Models makes several additional arguments why dismissal of its antitrust claims was improper. *See* Appellant's Br. 56−65. All of these arguments, however, are subsumed by the finding that *Noerr-Pennington* immunity would apply to SNF's alleged conduct.

First, Industrial Models contends that its argument on invitations to collude does not fall within the scope of the *Noerr-Pennington* doctrine because "offers to settle" are excluded from immunity following the Supreme Court's decision in *Federal Trade Commission v. Actavis, Inc.*, 133 S. Ct. 2223 (2013). Appellant's Br. 63. While *Actavis* stated that settlements do not, as a blanket rule, always fall under *Noerr-Pennington*, 133 S. Ct. at 2230−31, it limited its holding to particular types of settlement agreements in the context of the Hatch-Waxman drug-regulatory framework, *see id.* at 2230, a situation entirely separate from the settlement discussions unsuccessfully attempted in this case. We see no reason to apply *Actavis* to routine unsuccessful offers to settle that are clearly acts "attendant upon" litigation. *Coastal States*, 694 F.2d at 1367.

Second, Industrial Models argues that its monopoly by acquisition claim is not covered by *Noerr-Pennington* immunity because the allegations are not a form of government-petitioning. Appellant's Br. 64−65. Yet, the phrase "monopoly by acquisition" does not appear in the Complaint. In any event, the only allegations of acquisition merely state market shares of various companies in the fiberglass utility body industry, *see* J.A. 68−69, and do not allege facts sufficient to demonstrate a plausible claim for relief, *see Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 470 (5th Cir. 1992) (summarizing requirements to plead monopoly by acquisition as possession of monopoly power in the relevant market and willful acquisition "as distinguished from growth or development as a consequence of

a superior product, business acumen, or historic accident" (footnotes omitted)).

Third, Industrial Models argues that certain alleged acts constituting deceptive conduct would not fall under *Noerr-Pennington* because they "are not described by the Complaint as litigation or as threats of litigation." Appellant's Br. 54; *see id.* at 52−55 (listing allegations). Industrial Models, however, does not cite to the Complaint to support its argument. Accordingly, these arguments are waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed Cir. 2006) (waiving an underdeveloped argument); *see also* Fed. R. App. P. 28(a)(8)(A) (explaining that an appellant's argument must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

### III. Leave to Amend

The District Court twice denied Industrial Models' Motions for Leave to Amend the Complaint. J.A. 12, 14. The Fifth Circuit reviews denials of motions for leave to amend for abuse of discretion. *See SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016). In the Fifth Circuit, a court considers the following five factors to determine whether to grant leave to amend: (1) "undue delay," (2) "bad faith or dilatory motive," (3) "repeated failure to cure deficiencies by previous amendments," (4) "undue prejudice to the opposing party," and (5) "futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted). Industrial Models initially filed its response to the SNF entities' Motion to Dismiss instead of seeking leave to amend, *compare* J.A. 115, *with* J.A. 176, waited several months before requesting leave to amend, J.A. 176, 277, and did not assert new facts to cure the deficiencies of the original Complaint in either proposed amendment, *compare* J.A. 180−81 (summarizing alleged

new facts with citations to paragraphs of the proposed First Amended Complaint), *and* J.A. 277, 371−73 (alleging new facts of the proposed Second Amended Complaint), *with* J.A. 58, 65−67, 71−72 (original Complaint). Upon consideration of the record, we find that the District Court did not abuse its discretion in denying leave to amend.

## IV. Summary Judgment on Industrial Models' Request for Declaratory Judgment for Noninfringement of Trade Dress Claims

The SNF entities contest the District Court's grant of Industrial Models' Motion for Summary Judgment for declaratory judgment of noninfringement of trade dress. *Indus. Models III*, 2016 WL 4533321, at *4.[6] The Fifth Circuit reviews a grant of summary judgment de novo, applying the same standard that the district court applied. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). "Summary judgment is proper where there is no genuine dispute of material fact, and a party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)). Under 15 U.S.C. § 1125(a)(1) (2012), a trade dress owner has a cause of action for the use by any person of "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." The Supreme Court has interpreted this statute to grant protectable trade dress rights to unregistered trademarks in product design if a product is shown to be "distinctive," which requires the product, inter alia, to be non-functional and "likely to cause confusion with the product for which protection is sought." *Wal-Mart*

---

[6] The SNF entities do not contest the District Court's summary judgment ruling with respect to issues of patent and copyright infringement.

*Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 216 (2000) (citation omitted).

The District Court found that the SNF entities failed to identify anything more than the "overall shape, profile and appearance" of the utility bodies as the trade dress. *Indus. Models III*, 2016 WL 4533321, at *4. We agree. SNF has not presented any evidence on functionality beyond the bare assertion by BFX's Vice President that the features claimed are aesthetic, *see* J.A. 1730–31, which cannot overcome the presumption of functionality, *see* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement . . . , the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."). This alone requires summary judgment in favor of Industrial Models. The SNF entities also conceded that they provided no evidence of nexus or likelihood of confusion between the claimed molds and the purportedly infringing molds. *See* Oral Arg. at 21:01−09 ("If you're talking about a comparison of our trade dress to the [purportedly infringing utility body], no, I don't believe that is in [the opposition to summary judgment].").

## V. Attorney Fees

The District Court found the case exceptional and granted Industrial Models' Motion for Attorneys' Fees on the declaratory judgment of noninfringement claims. J.A. 33. It granted a total award of $239,408.25, *see* J.A. 33, without stating what amount of fees were awarded pursuant to the three individual statutory grants, 35 U.S.C. § 285 (patent), 17 U.S.C. § 505 (2012) (copyright), and 15 U.S.C. § 1117(a) (trade dress). We review issues "unique to patent law," including the award of attorney fees, consistent with our circuit's precedent. *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). "We review a district court's grant of attorney[] fees for an abuse of

discretion." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1334 (Fed. Cir. 2017).

We begin by explaining the three frameworks governing attorney fees in this case. Regarding patent claims, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court clarified that "an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. 1749, 1756 (2014) (internal quotation marks and footnote omitted). Regarding trade dress claims under 15 U.S.C. § 1117(a), the *Octane Fitness* standard for evaluating exceptional cases under the patent laws applies. *See Romag Fasteners*, 866 F.3d at 1335 ("This is unsurprising, as the language of the Patent Act and the Lanham Act for attorney[] fees is identical."). Finally, regarding copyright claims, section 505 of the Copyright Act provides that a court "may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505.

On the record here, we agree that an award of attorney fees is appropriate, but only with respect to fees awarded under the Lanham Act. The SNF entities' conduct with respect to the asserted declaratory judgment claims of noninfringement for patent and copyright was not unreasonable, and, if it awarded fees under either of those statutory authorities, the District Court abused its discretion. The SNF entities never actually filed claims of copyright or patent infringement and, in this litigation, they simply defended themselves against declaratory judgment claims. *See* J.A. 76–79. Their submissions to the court evinced no undue delay, *see* J.A. 35–50 (docket), and they made nonfrivolous submissions with respect to copyright and patent claims, including statements that

the SNF entities required more documentation from Industrial Models, such as brochures, to assess potential copyright infringement, and more information on component parts of Industrial Models' mold to assess potential patent infringement, *see* J.A. 2126−27 (citing, inter alia, J.A. 171−72).

However, as the SNF entities themselves note, "[t]he legal dispute between SNF and Industrial Models has always been about trade dress." J.A. 2119. The bulk of the SNF entities' actions and conduct, including the suit filed in Texas state court and voluntarily dismissed on remand, related to SNF's claims of trade dress infringement. Trade dress was also the only declaratory judgment holding the SNF entities chose to appeal to our court, *see* Cross-Appellants' Br. 60−66, and we have thoroughly reviewed the limited evidence presented below on this claim and found their showing insufficient to defeat Industrial Models' Motion for Summary Judgment, *see supra* Section IV. The SNF entities continued to litigate purported trade dress claims while providing only bare assertions of non-functionality, *see* J.A. 1730–31, no evidence of likelihood of confusion with Industrial Models' proposed product, *see* Oral Arg. at 21:01−09, and no direct consumer surveys or testimony, even though the focus of trade dress infringement analysis "is on how [the evidence] demonstrates that the meaning of the mark or trade dress has been altered in the minds of consumers," *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010) (internal quotation marks and citation omitted).

The District Court did not abuse its discretion in finding this case exceptional with respect to the trade dress claims. Because we uphold the award of attorney fees only under the Lanham Act, we remand to the District Court for clarification of whether it awarded fees solely under the Lanham Act and, if not, for determination of

the appropriate amount of the total awarded attorney fees.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. We affirm the District Court's denial of the SNF entities' Motion to Dismiss for Lack of Subject Matter Jurisdiction, grant of the SNF entities' Motion to Dismiss Counts I–III and VII of Industrial Models' Complaint, denials of Industrial Models' Motions for Leave to Amend, and grant of Industrial Models' Motion for Summary Judgment for declaratory judgment of noninfringement of trade dress; we vacate the District Court's grant of attorney fees to the extent they were awarded under any provision other than 15 U.S.C. § 1117(a); and we remand with instructions to calculate attorney fees under 15 U.S.C. § 1117(a). We also deny Industrial Models' Motion for Sanctions pursuant to Federal Rule of Appellate Procedure 38. For these reasons, the Decisions of the U.S. District Court for the Northern District of Texas are

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**